579 A.2d 1001

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Plaintiff,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant.

Commonwealth Court of Pennsylvania.

Argued June 13, 1990.

Decided Aug. 20, 1990.

David Wersan, with him, Carl B. Schultz, Asst. Counsel, for plaintiff.

Thomas H. Pacheco, Dept. of Justice, with him, Richard B. Steward, Asst. Atty. Gen., Environmental and Natural Resources Div., Michael M. Baylson, U.S. Atty., and Virginia Gibson–Mason, Asst. U.S. Atty., E.D.Pa., for defendant.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

CRAIG, President Judge.

The Pennsylvania Department of Environmental Resources (DER or department) has filed a motion for partial summary judgment on the department's complaint against the United States Small Business Administration (SBA). DER's complaint seeks judicial relief that would require SBA to assess, remove and clean up hazardous, residual and industrial waste SBA allegedly has stored, spilled and disposed of at its Mountville Wallpaper Company Facility in Lancaster County. The complaint also requests injunctive relief that would prohibit any future disposal or creation of industrial and hazardous waste at the site. DER's complaint requests this court to order SBA to comply with state environmental laws, and asks for equitable relief and civil fines if SBA fails to comply with the relief this court ultimately may grant.

The facts DER alleges in the complaint are as follows. SBA acquired the facility in 1987. DER conducted an inspection of the facility on May 22, 1987, which revealed that SBA had stored between seventy-five and one hundred drums containing contaminants at several places on the facility. On August 25, 1988, the Commonwealth's Toxic Waste Investigation and Prosecution Section obtained samples from several of the drums and from soil around leaking drums. The results from tests of the samples revealed the presence of hazardous substances. DER contends that these substances have contaminated or threaten to contaminate soils, sediments, and water of the Commonwealth.

The complaint charges that SBA has discharged or stored hazardous or residual wastes without permits which the Commonwealth's environmental laws require, and in violation of state laws and regulations.

SBA's answer and new matter to the complaint raises sovereign immunity as an affirmative defense. DER's motion for partial summary judgment seeks a ruling by this court that Congress has waived the sovereign immunity defenses on which SBA relies.

The issues presented are: (1) Whether section 6001 of the federal Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6961, provides for a waiver of sovereign immunity that permits DER to seek enforcement of the Commonwealth's Solid Waste Management Act (SWMA)[1] against SBA in the operation of the facility; (2) Whether section 313(a) of the federal Clean Water Act (CWA), 33 U.S.C. § 1323(a), which waives sovereign immunity, permits DER to pursue a complaint against SBA, as owner of the site, for the operation of a facility at which industrial waste is present in the soils and water in violation of the Commonwealth's Clean Streams Law (CSL)[2]; and (3) Whether the waiver of sovereign immunity in the federal Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9619, permits DER to pursue a complaint that seeks to impose liability under Pennsylvania law with respect to the hazardous substances at SBA's facility.

## 1. The Resource Conservation and Recovery Act

 The waiver of sovereign immunity provision in the federal RCRA states in pertinent part:

*Each department, agency, or instrumentality of ....* *the Federal Government ....* engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste *shall be subject to, and comply with, all .... State .... requirements, both substantive and procedural (including any requirement for permits* or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of

1. Act of July 7, 1980, P.L. 380, §§ 101–1003, *as amended,* 35 P.S. §§ 6018.101–6018.1003.
2. Act of June 22, 1937, P.L.1987, art. I, §§ 1–1001, *as amended,* 35 P.S. §§ 691.1–691.1001.

reasonable service charges. 42 U.S.C. § 6961 (emphasis added).

This court's conclusion is that RCRA's waiver of immunity clearly encompasses the application of Pennsylvania's Solid Waste Management Law, and the regulations DER has promulgated under that law, and relies upon here, to SBA's activities at the site, as alleged in DER's complaint.

DER's complaint charges that SBA has stored and disposed or discharged residual and hazardous wastes onto or into the ground on the facility without a permit in violation of sections 301 and 401(a), 35 P.S. §§ 6018.301 and 401(a), of the SWMA, and in violation of 25 Pa.Code §§ 75.21(a) and 75.270(a).

Sections 301 and 401(a) of the state SWMA respectively require persons to obtain permits from DER before storing or processing residual or hazardous wastes. The Pennsylvania Code regulations require persons to comply with DER's permitting process before engaging in activities relating to the use of land for storing or processing solid waste or hazardous waste.

The specific issue SBA raises with respect to the RCRA waiver is whether the statutory and regulatory provisions relating to solid waste disposal, which DER alleges SBA has violated, constitute "requirements", to which the waiver provision refers. SBA argues that Congress, by using the word "requirements", intended to limit the scope of the immunity waiver to objectively ascertainable, administratively-predetermined substantive requirements that state environmental authorities and courts can apply uniformly. SBA, relying on two United States Supreme Court decisions, *EPA v. California ex rel. State Water Resources Control*, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), and *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), contends that the statutes and regulations at issue do not constitute "requirements" that render the federal government subject to those state laws. In those decisions, the Supreme Court narrowly interpreted the word "requirements", as used in the immunity waiver

of the federal Clean Water Act, which is similar to RCRA's waiver, to mean only objectively quantifiable effluent limitations and standards.

As DER points out, Congress responded to the Supreme Court's narrow interpretation of the CWA's waiver provision by amending the waiver in 1977. As DER notes, in *Hancock*, the Supreme Court thought significant the fact that the waiver in the CWA did not say that federal facilities should comply with "*all* ... state requirements". *Hancock*, 426 U.S. at 182, 96 S.Ct. at 2014. Hence, the fact that Congress, in enacting the RCRA three months after the Supreme Court's decision, incorporated the word "all" to modify the word "requirements" in the RCRA's waiver provision, supports DER's position.

Despite this historical perspective, SBA, relying on federal decisions that have considered the post-amendment provisions, argues that the waiver does not encompass the provisions of the state SWMA and regulations DER seeks to enforce. We disagree.

The SWMA's definition of "disposal" broadly includes the activities DER alleges SBA has engaged in on the site. Thus, the general requirement of the SWMA provisions at issue is that no person or entity may store or dispose of residual or hazardous wastes unless they comply with the department's rules and regulations, specifically those relating to permits. The statute and regulations provide clear definitions of what substances constitute residual or hazardous wastes. Furthermore, this court's review of those rules and regulations reveals a thorough and detailed outline for the regulation of residual and hazardous waste through the permitting process, which satisfy even the SBA's narrow reading of the immunity provision.

The federal RCRA waiver provision specifically states that federal operators must comply with state procedural requirements as well as with substantive requirements, and also with state permit requirements. The statutory provisions discussed above specifically require permits for the activities in which SBA has engaged at the Mountville site.

Thus, although DER's complaint seeks enforcement of general statutory and regulatory prohibitions, the complaint also embodies the guidelines and standards relating to the regulation and permitting of activities in which SBA has engaged.

Furthermore, the federal decisions SBA has cited in support of its position are not controlling. This court notes that other federal courts, as cited in DER's brief, have concluded that Congress intended a broad waiver of sovereign immunity with respect to a state's right to enforce its solid waste laws against a federal entity. *See State of Maine v. Department of the Navy*, 702 F.Supp. 322 (D.Me. 1988).

### 2. The Clean Water Act

■ The provision of the federal Clean Water Act that waives sovereign immunity reads in pertinent part:

(a) Each department, agency, or instrumentality .... of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants .... *shall be subject to, and comply with, all State .... requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity* including payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including recordkeeping permits and any other requirement, whatsoever), (B) to the exercise of any .... State .... administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. 33 U.S.C. § 1323 (emphasis added).

SBA nevertheless claims immunity as to paragraph 19 of DER's complaint which alleges that "industrial waste has been placed or permitted to be placed, or discharged or permitted to be discharge [sic], into the waters of the Commonwealth without a permit in violation of Sections

301, 307, 401, and/or 402 of the CSL, 35 P.S. §§ 691.301, 691.307, 691.401, and/or 691.402."

SBA similarly claims immunity as to paragraphs 20 and 21 of DER's complaint which allege violations of 25 Pa. Code. §§ 101.2(a), 101.2(b), and 101.3(a). Those regulations concern incidents causing or threatening to cause pollution. Section 101.2(a) requires a person who discharges a pollutant into water, by "accident or other activity or incident" to notify the Commonwealth. Section 101.2(b) requires those persons making a pollutant discharge by "accident or other activity or incident" to take steps to prevent injury to persons downstream and to protect the waters from pollution, and to remove from water and ground, to the extent the Commonwealth requires, any residual substances. The regulation at 25 Pa.Code § 101.3 requires polluters to "take necessary measures to prevent [polluting] substances from reaching waters of this Commonwealth....".

With respect to the federal CWA and the statutory and regulatory provisions at issue, SBA again argues that CWA's immunity provision waives only objectively ascertainable, predetermined administrative requirements for discharge of water pollutants, and that the Pennsylvania Clean Streams Law and the regulations DER has promulgated under that law do not constitute "requirements" for the purpose of the Clean Water Act's waiver of sovereign immunity.

Contrary to SBA's argument, the waiver broadly renders federal entities subject to state administrative authority. Furthermore, because the statute and regulations clearly and unambiguously set forth the permit process requirements, this court concludes that Congress waived sovereign immunity with respect to the statutory provisions at issue.

SBA also argues that the provisions of the state Clean Streams Law, which describe violations of statutory prohibitions against discharge of pollutants into Commonwealth waters, as "nuisances" are not provisions the waiver encompasses because the determination of whether an act constitutes a nuisance cannot be accomplished through predeter-

mined standards. However, consistent with our discussion above, we conclude that Congress waived immunity with regard to this provision because DER, by seeking to enforce the provision, is exercising its administrative authority.

Furthermore, the statute merely provides that a person who discharges pollutants into the waters of the Commonwealth creates a nuisance. Because all of the factors that must be considered in reaching that determination are defined precisely in the statute, once evidence is presented that a person has discharged a pollutant, the ultimate outcome is that the offending party must comply with the permit and other requirements of the law.

### 3. CERCLA

 CERCLA's federal waiver provision, 42 U.S.C. § 9620, states that

"[e]ach department, agency, and instrumentality of the United States .... shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity.....

(4) State laws

State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to facilities which are not owned or operated by any such department, agency, or instrumentality.

SBA argues that this provision of CERCLA has no applicability to the relief DER seeks because the statutes and regulations upon which DER bases its complaint do not relate to removal or remedial action to which CERCLA's waiver provision specifically applies. We disagree.

Although the statutes and regulations do not specifically use the term "cleanup", the scope of those laws clearly encompasses the cleanup of hazardous waste sites. The state laws at issue are addressed to past actions as well as prospective acts. The storage, disposal, and transportation components of those laws certainly embrace the concept of cleanup.

CERCLA defines the terms "removal" and "remedial" very broadly. 42 U.S.C. § 9601(23) and (24). The only limitation CERCLA's waiver provision seems to contain is that states may not impose more stringent standards on federal facilities than those imposed upon non-federal entities.

SBA also argues that Pennsylvania's Hazardous Sites Cleanup Act (HSCA), 35 P.S. §§ 6020.102–6020.1305, is aimed at the cleanup of hazardous substances released into the environment as a result of improper disposal. Thus, SBA asserts that that statute is the proper means by which DER should seek to compel cleanup, and that the federal CERCLA waives immunity only with respect to the state HSCA. We disagree.

Section 1301 of the HSCA provides that

an identified and responsible owner or operator of a site with a release or threatened release of a hazardous substance or a contaminant shall not be subject to enforcement orders or the cost recovery provisions of this act, until the department has instituted administrative or judicial enforcement action against the owner or operator under other applicable environmental laws and the owner or operator has failed to comply with or is financially unable to comply. 35 P.S. § 6020.1301.

That language requires DER to pursue remedies under the state's SWMA and CSL, which, as we have concluded above, encompass the concept of cleanup, before seeking to apply provisions of the Pennsylvania HSCA.

In conclusion, the federal waiver provisions of the RCRA, CWA, and CERCLA waive SBA's immunity with respect to

the application of the laws DER seeks to enforce through its complaint. Therefore, we grant DER's motion for partial summary judgment, adjudging that SBA's sovereign immunity defenses are waived.

## ORDER

Now, August 20, 1990, the Pennsylvania Department of Environmental Resources' motion for partial summary judgment is granted.